UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**RICK GANDY,**

      **Plaintiff,**

v.                                           No. 2:17-cv-00558 JCH-CG

**RWLS, LLC, d/b/a/ RENEGADE
SERVICES, and MATTHEW GRAY,
Individually,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On June 22, 2017, Defendants filed a Motion to Dismiss Plaintiff's Individual and Class Claims (ECF No. 12). The Court, having considered the motion, briefs, pleadings, and applicable law, concludes that the motion should be denied.

**I.    FACTUAL ALLEGATIONS**

Plaintiff Rick Gandy worked for Defendants RWLS, LLC, and its president, Matthew Grey (collectively, "Defendants"), as an operator and rigger in New Mexico from approximately November 2014 to June 2015. Compl. ¶¶ 1, 4, ECF No. 1. RWLS, LLC, headquartered in Texas, is an oilfield service company that provides wireline and other oilfield services to customers. *Id.* ¶ 6. As a Field Employee, Plaintiff's primary job duties consisted of performing technical and manual labor to provide Defendants' products and services for customers at job sites. *Id.* ¶ 18. During his employment, Plaintiff reported to Defendants' Hobbs, New Mexico location. *Id.* ¶ 4.

According to the complaint, "Defendants regularly scheduled Plaintiff to work for a minimum of twelve (12) hours per day and a minimum of eighty-four (84) hours per week during his employment." *Id.* ¶ 24. "Despite Plaintiff routinely working over 80 hours per week,

Defendants failed to pay him any overtime premium for all hours worked in excess of 40 per workweek during the time period Plaintiff received compensation on a salary or salary plus non-discretionary bonus basis." *Id.* ¶ 25. Defendants misclassified Plaintiff as exempt and paid him on a salary or salary-plus-bonus basis with no overtime pay for his many hours of overtime work. *Id.* ¶ 26.

Plaintiff brings his wage claim as a Rule 23 class action on behalf of the "NM Class Members," all of Defendants' Field Employees who received pay on a salary or salary plus non-discretionary bonus basis who worked in excess of 40 hours in at least one workweek in New Mexico over the past three years. *Id.* ¶ 5. According to the complaint, "Defendants regularly scheduled the Class Members to work for a minimum of twelve (12) hours per day and a minimum of eighty-four (84) hours per week." *Id.* ¶ 36. "Despite the NM Class Members routinely working over 40 hours per week, Defendants failed to pay the NM Class Members any overtime premium for all hours worked in excess of 40 per workweek during the time period the NM Class Members received compensation on a salary or salary-plus-bonus basis." *Id.* ¶ 37. Defendants misclassified the NM Class Members as exempt and paid them on a salary or salary-plus-bonus basis with no overtime pay for their many hours of overtime work. *Id.* ¶ 38.

Plaintiff alleges that Defendants violated the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22(D), by misclassifying him and the other NM Class Members as exempt from overtime and by failing to pay him and other NM Class Members overtime compensation at a rate of time-and-one-half for all hours worked in excess of 40 in an individual workweek.

## II. LEGAL STANDARD

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the nonmoving party and allowing all reasonable inferences in favor of the nonmoving party. *Archuleta*, 523 F.3d at 1283. The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and 12(f) on two grounds: (i) failure to plead sufficient facts to support a reasonable inference that Plaintiff received less than the overtime pay due; and (ii) the case cannot proceed as a matter of law as a Rule 23 class action, but must be pursued as a collective action.

According to the NMMWA, an "employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." N.M. Stat. Ann. § 50-4-22(D). The NMMWA "establishes a floor below which employers cannot pay employees wages and also requires the payment of time and a half for work in excess of a forty-hour workweek." *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 47, 168 P.3d 129

(quotations omitted). Any "one or more employees for and on behalf of the employee or employees and for other employees similarly situated" may bring a lawsuit for relief under the NMMWA. N.M. Stat. Ann. § 50-4-26(D).

### A. Sufficiency of Allegations to Support Plaintiff's Cause of Action

Defendants argue that Plaintiff is required to identify a specific workweek in which he worked more than 40 hours and was denied overtime pay. This Court has rejected this argument in a similar case brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219 ("FLSA"). *See Tapia v. DirecTV, Inc.*, No. Civ. 14cv939-JCH-GBW, Mem. Op. and Order 8-10 (ECF No. 43, filed June 22, 2016) (refusing to dismiss FLSA case under Rule 12(b)(6) for failure to state a claim where plaintiffs alleged in complaint that they "routinely worked more than 40 hours per week" and spent in excess of 50 to 60 hours per week performing tasks for the benefit of Defendants, many of those hours unpaid, despite that plaintiff failed to allege specific workweek).

Following this Court's decision in *Tapia*, the Tenth Circuit issued an unpublished opinion in *ElHelbawy v. Pritzker*, 663 F. App'x 658 (10th Cir. Oct. 13, 2016), upon which Defendants rely. The Tenth Circuit cited *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), for the proposition that to survive Rule 12(b)(6) dismissal, a plaintiff "must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Pritzker*, 663 F. App'x at 663. The actual holding of the *Pritzker* case was limited, however, because the plaintiff there failed to even state that she "worked more than 40 hours in any week or that, if she did, she was not paid overtime for those hours." *Id. Pritzker* does not resolve whether the Tenth Circuit would also have required an allegation of a specific workweek, even if the above details had been included. The

parties agree that the Tenth Circuit has yet to adopt a specific approach for determining the level of detail needed in an FLSA or NMMWA claim to overcome a Rule 12(b)(6) motion.

The *Landers* case upon which the Tenth Circuit relied held that the plaintiff failed to state a claim because he failed to provide "any detail regarding a given workweek" in which he worked more than 40 hours and was not paid for overtime in that week. *Landers*, 771 F.3d at 646. Nor did he give sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than 40 hours in a given week. *Id.* As the Ninth Circuit stated: "Although plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Id.* (quoting *Dejesus v. JF Management Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). The Ninth Circuit, however, declined to impose the requirement that a plaintiff must approximate the number of hours worked without compensation, but at minimum, the "plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid for the excess hours in that workweek." *Id.*

Turning to other out-of-circuit authority, the circuits are divided as to the level of detail required to state a claim. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 776 (4th Cir. 2017) (and cited cases). The First, Second, and Third Circuits have adopted an approach "requiring plaintiffs only to 'sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'" *Id.* (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and citing *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241–43 (3d Cir. 2014) (adopting *Lundy* standard); *Landers*, 771 F.3d at 644–45

5

(same); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 46–47 (1st Cir. 2013)). The Eleventh Circuit, in an unpublished opinion, has held that extensive pleading is not usually necessary and that a plaintiff states a claim where there are allegations that the defendant repeatedly violated the FLSA by failing to pay covered employees minimum hourly wages and to compensate employees who worked in excess of 40 hours a week at the proper rates. *Id.* (citing *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008)).

After examining the various decisions, the Fourth Circuit adopted the majority approach:

[T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay….

[W]e emphasize that the standard we today adopt does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours. Rather, this standard is intended to require plaintiffs to provide some factual context that will nudge their claim from conceivable to plausible…. [P]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week. A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, *or any other facts* that will permit the court to find plausibility.

*Hall*, 846 F.3d at 777 (internal quotations and citations omitted) (emphasis in original).

In this case, Plaintiff alleges he worked as a Field Employee as a Rigger/Operator in New Mexico from approximately November 2014 to June 2015. Compl. ¶¶ 4, 17, ECF No. 1. He asserts "Defendants regularly scheduled Plaintiff to work for a minimum of twelve (12) hours per day and a minimum of eighty-four (84) hours per week during his employment," *id.* ¶ 24, and that despite "routinely working over 80 hours per week, Defendants failed to pay him any overtime premium for all hours worked in excess of 40 per workweek during the time period

6

Plaintiff received compensation on a salary or salary plus non-discretionary bonus basis," *id.* ¶ 25. Although Plaintiff has not specified a particular workweek, the Court is not convinced that the Tenth Circuit will require that particular fact, so long as other facts nudge the claim to the plausible. *Cf. Hall*, 846 F.3d at 777 ("[W]e emphasize that the standard we today adopt does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours") (italics in original); *Dejesus*, 726 F.3d at 90 ("*Lundy*'s requirement that plaintiffs must allege overtime without compensation in a "given" workweek, was not an invitation to provide an all-purpose pleading template alleging overtime in "some or all workweeks." It was designed to require plaintiffs to provide some factual context that will "nudge" their claim "from conceivable to plausible.") (internal citation omitted).

As to the frequency of unpaid work, Plaintiff uses the terms "routinely" or "regularly," which is some detail beyond merely repeating the language of the statute. Plaintiff alleges the general length of hours worked in a week was over 84 hours, well above the 40-hour threshold. Accepting these allegations as true, Plaintiff has given Defendants sufficient factual context to nudge his claim from conceivable to plausible to state a claim for relief for failure to pay overtime as required by the NMMWA. *Cf. Boon v. Canon Business Solutions, Inc.*, 592 F. App'x 631, 632 (9th Cir. Feb. 18, 2015) (unpublished) ("Boon identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week. Considering the facts in the light most favorable to Boon, his allegations satisfy the pleading requirements of *Landers* at this stage of the litigation."); *Manning*, 725 F.3d at 46-47 (holding that plaintiff's claim survived dismissal where plaintiffs alleged that they were regularly scheduled for 40-hour/week shifts and that any time they worked during meal breaks, before or

after their shifts, and in training periods, would thus entitle them to overtime compensation); *Tapia*, No. Civ. 14cv939-JCH-GBW, Mem. Op. and Order at 8-10.[1]

### B. Collective Versus Class Action

Federal Rule of Civil Procedure 23 governs class action procedures in federal court. *See* Fed. R. Civ. P. 23. Under the notice provisions for any class certified under Rule 23(b)(3), "the court will exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). The FLSA permits an action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In contrast to Rule 23, the FLSA contains an "opt in" requirement: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The NMMWA "permits a collective action by employees on behalf of 'themselves and other employees similarly situated.'" *Armijo*, 2007-NMCA-120, ¶ 47 (quoting N.M. Stat. Ann. § 50–4–26(B)(2)). Because neither the NMMWA nor New Mexico case law had defined the term "similarly situated," the New Mexico Court of Appeals turned to the FLSA, with its similar provision, for guidance in interpreting the NMMWA. *Id.* The *Armjio* court explained that federal district courts have adopted or discussed at least three approaches under the FLSA: (i) the "two-tiered" or "ad hoc" approach, (ii) satisfying all the requirements of a Rule 23 class action, or (iii) satisfying the pre-1966 version of Rule 23. *See id.* ¶ 48. After considering and rejecting the class

---

[1] The only case to rely on *Pritzker* is a district court case from the Western District of Oklahoma, which Defendants cite in their reply and in which the court concluded the following allegations insufficient to state a claim: "[f]or some time during his employment, [plaintiff] worked in excess of 50 to 60 hours a week" and at all times his employer failed to pay overtime compensation. *Bradshaw v. Uber Technologies, Inc.*, 2017 WL 2455151, at *10 (W.D. Okla. June 6, 2017) (issuing defendants judgment on the pleadings). The Court finds that Plaintiff's allegations here of routinely and regularly working 84 hours in a workweek distinguish *Bradshaw*.

action requirements under Federal Rule of Civil Procedure 23 for either the current version or the pre-1966 version, the *Armijo* court concluded that the two-tiered/ad hoc approach (followed by a majority of federal courts) is the proper standard to apply to collective actions under Section 50-4-26(B)(2) of the NMMWA. *Id.* ¶¶ 49-50.

Defendants argue that Plaintiff must pursue his claims for NM Class Members as an opt-in collective action similar to the two-tiered approach used in FLSA cases, rather than a Rule 23 class action. Relying on *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), Defendants assert that the two-tiered collective action approach used in NMMWA cases is a substantive, rather than procedural rule, so this federal court is not bound to follow Rule 23.

In a federal diversity case, federal courts should apply state substantive law and federal procedural law. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011). As the Tenth Circuit explained, the "Rules Enabling Act gives the Supreme Court 'the power to prescribe general rules of practice and procedure and rules of evidence for cases in' federal courts, provided that '[s]uch rules shall not abridge, enlarge or modify any substantive right.'" *Id.* (quoting 28 U.S.C. § 2072). In *James River*, the Tenth Circuit analyzed the Supreme Court's more recent interpretation of the Rules Enabling Act in *Shady Grove*. *Id.* at 1217-18. *Shady Grove* is a plurality opinion, and according to the Tenth Circuit, Justice Stevens' concurring opinion controls. *Id.* at 1217. Justice Stevens joined in Sections I and II-A of the plurality opinion, so those parts also control. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015).

The Tenth Circuit described Justice Stevens' two-step framework for resolving alleged conflicts between a federal rule promulgated under the Rules Enabling Act and state law:

> First, the diversity court "determine[s] whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room

for the operation of seemingly conflicting state law." *Shady Grove*, 130 S.Ct. at 1451 (quotations omitted). "In some instances, the plain meaning of a federal rule will not come into direct collision with the state law, and both can operate." *Id.* (quotations omitted). In other words, the first step is to determine whether the federal rule and state law conflict.

Second, if applying the federal rule and state law results in a "direct collision, the court must decide whether application of the federal rule represents a valid exercise of the rulemaking authority ... [under] the Rules Enabling Act." *Id.* (quotations and citation omitted). "That Act requires, *inter alia*, that federal rules 'not abridge, enlarge or modify *any* substantive right.' " *Id.* (quoting the Rules Enabling Act, 28 U.S.C. § 2072(b)).

*Id.* at 1218.

As for the first step, in Section II-A, Justice Scalia, writing for the plurality, explained: "Rule 23 provides a one-size-fits-all formula for deciding the class-action question," whereby a plaintiff whose suit meets the criteria of Rule 23 is entitled to pursue his claim as a class action. *Shady Grove*, 559 U.S. at 398-99. If the state law directly conflicts with the federal rule, the state law cannot apply in diversity cases unless Rule 23 is ultra vires. *Id.* at 399.

Justice Stevens departed from the plurality regarding the second part of the analysis, focusing not on whether the federal rule really regulates procedure as Justice Scalia advocated, but rather on the nature of the state law. *See id.* at 419-25. According to Justice Stevens, the balance struck by Congress addresses federalism concerns whereby federal courts may not override state laws that operate as procedural devices but define the scope of the state substantive rights or remedies. *Id.* at 420. Justice Stevens concluded that the critical question "turns on whether the state law actually is part of a State's framework of substantive rights or remedies." *Id.* at 419. A federal rule cannot govern if it displaces a state "procedural" law that "is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. Justice Stevens cautioned that the bar for finding a Rules Enabling Act

problem is "a high one," meaning that there must be "little doubt" that application of the federal rule would alter a state-created substantive right. *Id.* at 432.

The New York law at issue in *Shady Grove* prohibited class actions in suits seeking penalties or statutory minimum damages, and the plaintiff in the case sought relief on behalf of itself and a class of all others to whom the defendant insurance company allegedly owed statutory interest on overdue benefits. *See id.* at 396-97. Justice Stevens easily found a conflict under the first prong because Rule 23 squarely governed whether the district court should certify a class. *Id.* at 429-30. He also concluded that applying Rule 23 did not violate the Enabling Act, noting that the rule was in New York's procedural code and its text expressly applied not only to claims based on New York law, but also to claims based on federal law or other states' laws. *See id.* at 432-36. Justice Stevens examined the legislative history of the rule, determining that it was not clear that the rule would operate as a substantive limitation on New York's statutory damages. *See id.* at 433-34. In light of the "two plausible competing narratives" regarding the reason the New York legislature enacted the rule, Justice Stevens concluded that the Court should respect the plain textual reading of the state rule in the procedural code "about when to certify class actions brought under any source of law, and respect Congress' decision that Rule 23 governs class certification in federal courts." *Id.* at 436.

Turning to the question here of whether the opt-in collective action rule is procedural or substantively intertwined with legal rights and remedies, the parties have not cited circuit authority to have directly addressed the question. Instead, they have cited numerous district court opinions, which appear split on the issue. *Compare, e.g., Driscoll v. George Washington Univ.*, 42 F.Supp.3d 52, 62 (D.D.C. 2012) (concluding that District of Columbia's opt-in provision enacted as part of wage and hour law confers substantive rights such that application of Rule 23

would violate Rules Enabling Act); *with Roberts v. C.R. England, Inc.*, 2018 WL 1449200, at *4-5 (D. Utah Mar. 22, 2018) (disagreeing with *Driscoll* and holding under *Shady Grove* that plaintiffs' claims brought under state law containing opt-in provision were subject to opt-out notice requirement under Rule 23). With no controlling precedent, the Court will analyze NMMWA's "collective action" requirement under *Shady Grove*'s two-step process.

### 1. Is Rule 23 in direct conflict with the NMMWA "collective action" provision?

Plaintiff argues that the NMMWA contains no express opt-in requirement similar to the FLSA and the *Armijo* case does not mention an opt-in requirement. Plaintiff contends that there is no inherent conflict between applying the ad hoc two-step process and also using an opt-out standard.

Unlike the NMMWA, the FLSA expressly states that no employee will be a party plaintiff "unless he gives his consent in writing to become such a party…." 29 U.S.C. § 216(b). In *Armijo*, the Court of Appeals adopted the following two-tiered approach: (i) a court makes an initial notice stage determination of whether there are substantial allegations that the putative class members were together the victims of a single decision, policy or plan; and then (ii) after discovery and/or a motion to decertify the class, the court revisits its initial determination using a stricter standard of similarly situated. *Armijo*, 2007-NMCA-120, ¶ 48. Thus, although *Armijo* suggests it will look to FLSA cases for guidance, it did not expressly adopt an opt-in or opt-out procedure in the case. Defendants nonetheless contend that New Mexico state trial courts have construed *Armijo* to mean that NMMWA collective actions must proceed as opt-in collective actions, like their FLSA counterparts.

The Court need not decide whether the New Mexico appellate courts would interpret the NMMWA as requiring an opt-in procedure because, even assuming a judicially created opt-in

requirement exists under the NMMWA, the Court concludes *infra* that the opt-in collective action rule is procedural in nature.

### 2. Does the opt-in collective action requirement function to define the scope of the state-created right?

Defendants argue that the opt-in collective action requirement is part of New Mexico's framework for substantive rights or remedies because it "substantively confers rights on employees to have their claims litigated only if they have affirmed their intent to be bound, and for employers the collective action provision affords the right not to be sued in representative actions by any employee who has not affirmatively chosen to sue." Defs.' Mot. 11, ECF No. 12. Defendants argue that, unlike the New York provision in *Shady Grove*, the collective action provision applies only to NMMWA cases, not more broadly to other law, demonstrating it is intertwined with NMMWA's substantive rights.

Unlike the New York law class action limitation at issue in *Shady Grove*, which was located in the procedural code and applied broadly to claims based on New York, federal, or other state laws, the "collective action" provision, and any judicially construed opt-in requirement, is limited to claims brought under the NMMWA. According to Justice Stevens' reasoning, the fact that the collective action opt-in requirement applies to NMMWA claims and is not a generally applicable procedural rule to other laws weighs more in favor of finding the right to be substantive. The Court, however, does not find this factor dispositive of the issue.

The ad hoc two-step process for conditional certification and the opt-in requirement are the processes by which a similarly situated person joins in a collective action. Whether a similarly situated person must affirmatively act to join a suit or is automatically in the suit unless he opts out does not determine the substantive rights and remedies potentially available to that person. As such, an opt-in provision functions very differently from a state law provision

13

restricting class actions, which more directly defines the scope of the state-created right. The Court finds the nature of the opt-in collective action rule more significant to the analysis than the fact that it is a process applied only in NMMWA cases. Accordingly, the Court concludes that the opt-in collective action requirement is not substantive in nature to the rights and remedies created by the NMMWA. *Cf. Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264-65 (3d Cir. 2012) (concluding, based on analysis of *Shady Grove*, that permitting opt-out class action for violation of state wage laws to proceed alongside separately-filed FLSA opt-in action does not violate Rules Enabling Act because regulation of class relief under § 216(b) is procedural); *Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) (describing the difference "between the opt-in procedure under section 216(b) and the opt-out procedure under Rule 23(c)(2)(B)" as "a mere *procedural* difference") (pre-*Shady Grove*).

Furthermore, Justice Stevens also looked to legislative history and legislative intent. The fact that an opt-in requirement is not explicitly set forth in the NMMWA undermines the argument that legislators intended to define the scope of NMMWA substantive right through the opt-in procedural vehicle. Defendants have pointed to no legislative history in the adoption of the NMMWA that suggests a different result. The legislative silence indicates that an opt-in requirement is not so intertwined with the state right or remedy that it functions to define the scope of the right under the NMMWA.

For the foregoing reasons, Defendants have not satisfied the high bar for finding a Rules Enabling Act problem. The Court therefore concludes that Rule 23 and its opt-out notice provision apply to Plaintiff's NMMWA claim brought on behalf of himself and others similarly situated. *Cf. Roberts v. C.R. England, Inc.*, 2018 WL 1449200, at *4 (D. Utah Mar. 22, 2018) (holding that Rule 23's opt-out notice requirement applies to plaintiff's Utah Consumer Sales

Practices Act ("UCSPA") claim, even though the UCSPA explicitly provided for opt-in notice, because the UCSPA "establishes substantive consumer rights and corresponding remedies, but a potential UCSPA class member's entitlement to those rights do not change based on whether the process for joining a suit entails opt-in or opt-out notice of the proceeding").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Plaintiff's Individual and Class Claims (**ECF No. 12**) is **DENIED**.

**UNITED STATES DISTRICT JUDGE**